**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **HUNTER BROWN AND** | § | |
| **RONALD ALBRITTON,** | § | |
| **Individually and On Behalf of All** | § | |
| **Others Similarly Situated,** | § | **CASE NO. 2:22-CV-00116-KRS-SMV** |
|     **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **EOG RESOURCES, INC.;** | § | **COLLECTIVE AND CLASS ACTION** |
|     **Defendant.** | § | |
| | § | |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

Respectfully submitted,

Josh Borsellino
TX State Bar No. 24045532
**Borsellino, P.C.**
1020 Macon St., Suite 15
Fort Worth, Texas 76102
Telephone: (817) 908-9861
Facsimile: (817) 394-2412
Email: josh@dfwcounsel.com

**ATTORNEY FOR PLAINTIFFS AND OTHERS SIMILARLY SITUATED**

# TABLE OF AUTHORITIES

*Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2013 WL 11336856
(D.N.M. Sept. 24, 2013).................................................................................................14

*Aguilar v. Mgt. & Training Corp.*, cv-16-050 WJ/GJF, 2017 WL 4277139
(D.N.M. Jan. 27, 2017) ................................................................................................10

*Alba v. Madden Bolt Corp.*, C.A. 4:02-cv-01503, 2002 WL 32639827
(S.D. Tex. June 5, 2002)..................................................................................................8

*Baldozier v. Am. Family Mut. Ins. Co.*, 375 F.Supp.2d 1089 (D. Colo. 2005)...............................6

*Ball v. Dynamic Support Servs., LLC*, No. 4:15-CV-036, 2015 WL 13751963
(D.N.D. Oct. 13, 2015)..............................................................................................7, 10

*Bland v. PNC Bank, N.A.*, 2015 WL 7587365, at *3 (W.D. Pa. Nov. 25, 2015)...........................12

*Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676 (D. Kan. 2004) ........................................9

*Buffington v. Ovintiv USA Inc.*, Civ. No. 20-cv-02477-RM-STV (D. Col. July 16, 2021)......10, 13

*Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307 (D.N.M. 2017) ....................................6, 13

*Darrow v. WKRP Mgmt., LLC*, No. 09-cv-01613-CMA-BNB, 2012 WL 638119
(D. Colo. Feb. 28, 2012)................................................................................................12

*Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427 (D.N.M. 2018)........................................7, 8

*Field v. Anadarko Petroleum Corp.*, No. 4:20-CV- 00575, 2020 WL 6075633
(S.D. Tex. Oct. 15, 2020).............................................................................................10

*Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863
(D. Neb. Sept. 19, 2018)..............................................................................................11

*Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829
(D.N.M. Apr. 20, 2016).................................................................................................9

*Garner v. G.D. Searle*, 802 F. Supp. 418 (M.D. Ala. 1991)...............................................7

*Gee v. Suntrust Mortgage, Inc.*, No. C-10- 1509-RS, 2011 WL 722111
(N.D. Cal. Feb. 18, 2011).............................................................................................11

*Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv- 00240-REB-NW, 2015 WL 1090181 (D. Colo. Mar. 10, 2015)................................................................11

*German v. Holtzman Enterprises, Inc.*, cv-03540-PAB-STV (D. Col. March 22, 2021)..............12

*Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164 (D. Kan. 2006).....................9

*Grayson v. K-Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996).......................................................5, 7, 8

*Halle v. Galliano Marine Svc., LLC*, No. 15-5648, 2018 WL 1757343 (E.D. La. Apr. 12, 2018)............................................................................................................7

*Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242 (S.D. Tex. May 27, 2014).......................11

*Hembree v. 3-D Oil Field Servs. & Rental, L.L.C.*, No. CIV 20-00343 RB/CG, 2020 WL 7642862 (D.N.M. Dec. 23, 2020)...............................................................................7

*Hernandez v. Apache Corp.*, No. 4:16- cv-03454 (S.D. Tex. Sept. 8, 2017).................................11

*Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) ..........................................................................................................11

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989)..............................................................7, 8

*Jackson v. New York Telephone Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995)..........................................8

*Jackson v. Powersat Communications (USA) LP*, No. 2:20-cv-486 KRS/GJF (D.N.M. July 14, 2021)....................................................................................................12

*Jackson v. Synergies3 Tec Svcs.*, LLC, No. 4:19-cv-00178-SRC, 2019 WL 5579514 (E.D. Mo. Oct. 29, 2019)...............................................................................................11

*Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017 (D.N.M. Nov. 19, 2020) ................................................................6, 10, 13

*Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV-3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017)..............................................................................10

*Landry v. Swire Oilfield Services, L.L.C.*, 252 F.Supp.3d 1079 (D.N.M. 2017).................8, 13, 14

*LeBlanc v. Halliburton Co.*, Civ. No. 17-0718 KG-GJF, 2018 WL 3999567 (D.N.M. Aug. 21, 2018)................................................................................................6, 11

*Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049
(D. Kan. May 21, 2008)........................................................................................................11

*Lewis v. GEO Group, Inc.*, No. CIV-08-881-M, 2009 WL 3763821
(W.D. Okla. Nov. 9, 2009)....................................................................................................6

*May v. E & J Well Service, Inc.*, No. 14–cv–00121–RBJ, 2014 WL 2922655
(D. Colo. Jun. 27, 2014)..................................................................................................6, 11

*McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085
(D. Kan. Aug. 27, 2009).......................................................................................................11

*Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010 (D. Minn. 2007)................................9

*Olivas v. C & S Oilfield Servs., LLC*,  349 F. Supp. 3d 1092 (D.N.M. 2018)..............................10

*Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868
(D.N.J. Dec. 12, 2014)...........................................................................................................11

*Ortiz v. Rain King, Inc.*, 2003 WL 23741409 (S.D. Tex. June 25, 2002).......................................8

*Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2005 WL 1799208 (D. Kan.).......................10

*Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK
(D.N.M. Dec. 10, 2021)........................................................................................................10

*Pruess v. Presbyterian Health Plan*, Inc., No. CV 19-629 KG/JFR, 2020 WL 6544243
(D.N.M. Nov. 6, 2020) ......................................................................................................7, 14

*Robertson v. Whitman Consulting Org., Inc.*, No. 19-CV-02508-RM-KLM, 2020 WL 5097597
(D. Colo. July 22, 2020).......................................................................................................10

*Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930 (N.D. Ill. 2008) ...........................................7

*Sperling v. Hoffmann- La Roche, Inc.*, 118 F.R.D. 392 (D.N.J. Jan. 5, 1988)...............................7

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP,
2015 WL 7075971 (W.D. Tex. Oct. 5, 2015).......................................................................11

*Tegtmeier v. PJ Iowa, LLC*, 208 F. Supp. 3d 1012 (S.D. Iowa 2016) .........................................11

*Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095 (10th Cir. 2001)...................................5, 6, 8, 9

*Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR,
2020 WL 2768977 (D.N.M. May 28, 2020)..................................................................6, 13

*Vega v. Point Security, LLC*, No. A-17- CV-049-LY, 2017 WL 4023289
(W.D. Tex. Sept. 13, 2017)...........................................................................................13

*Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522
(E.D. Pa. Nov. 29, 2016)..............................................................................................11

*Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807, 810-11 (S.D. Tex. 2003)...........................8

*Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131 (S.D. Tex. Jan. 5, 2015)..............11

*Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417 (W.D. Okla. 2017).................................11

*Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446
(D. Kan. Feb. 26, 2009) ..........................................................................................10, 11

*Zamora v. Sw. Glass & Glazing, Inc.*, No. 1:15-CV-01041-RJ, 2016 WL 10516172
(D.N.M. Aug. 23, 2016)...............................................................................................13

**STATUTES**
29 U.S.C. § 216(b)....................................................................................5, 6, 12, 14

29 U.S.C. § 255(a) .......................................................................................................13

**RULES**
Fed. R. Civ. P. 23 .........................................................................................................6

**TABLE OF CONTENTS**

A.   PRELIMINARY STATEMENT.................................................................................1

B.   FACTUAL BACKGROUND...................................................................................1

     1.   EOG water consultants had similar job duties and pay, and they share a
          common employment experience..........................................................................3

     2.   EOG directed, controlled, and supervised its water consultants......................3

     3.   EOG's water consultants did not risk their own investments or have any
          opportunity for profit or loss from EOG's operations......................................4

     4.   EOG did not require its water consultants to have any specialized training,
          advanced degree or unique skill.........................................................................4

C.   ARGUMENT AND AUTHORITIES......................................................................5

     1.   Conditional certification of the FLSA collective is appropriate because the
          class is "similarly situated."...............................................................................5

     2.   Courts within this Circuit use a two-stage approach for class certification.....6

     3.   Plaintiffs have surpassed the minimum burden and made the required
          showing that water consultants at EOG are similarly situated for certification
          purposes................................................................................................................8

     4.   Merits-based arguments are not relevant when deciding conditional
          certification........................................................................................................10

     5.   Independent contractor misclassification cases are well-suited for
          certification........................................................................................................12

     6.   Court-authorized notice is appropriate in this case.........................................12

     7.   A three-year notice period is appropriate..........................................................14

     8.   Disclosure of names and contact information is required................................14

D.   CONCLUSION.......................................................................................................15

Plaintiffs Hunter Brown and Ronald Albritton, individually and on behalf of others similarly situated, hereby file this Motion for Conditional Certification, as follows:

## A.    PRELIMINARY STATEMENT

EOG misclassified its water consultants as independent contractors (collectively, the "Water Consultants"), to avoid paying them overtime wages required under federal law. EOG instead maintained a uniform pay practice of paying these oilfield workers a day rate without any overtime compensation. This practice violates the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA). Therefore, on February 18, 2022, Plaintiffs filed their Complaint (Doc. 1) against EOG for violations of the FLSA and the NMMWA.

Plaintiffs seek to allow their coworkers—all water consultants working for EOG during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime—to receive notice of and advise them of their right to opt into this collective action. Plaintiffs' evidence meets and surpasses the lenient standard for conditional certification, and the Court should certify this collective action and order notice to be sent to putative class members. Through Plaintiffs' Complaint and supporting declarations attached hereto, Plaintiffs exceed their low burden on this motion and demonstrate that EOG subjected all Water Consultants to the same unlawful policies.

## B.    FACTUAL BACKGROUND

EOG is an oil and gas company with substantial operations in the Permian Basin, which extends from east of Midland, Texas to southeastern New Mexico.[1] In 2016, EOG merged with a New Mexico-based oil and gas company, Yates Petroleum, which added "260,000 net acres in

---

[1] https://www.eogresources.com/company/areas-of-operation/.

the core areas of the Delaware Basin and Powder River Basin."[2] According to the company's

most recent 10-Q statement filed with the SEC, "EOG's major producing areas in the United

States are in New Mexico and Texas."[3] EOG is one of New Mexico's largest oil and gas

operators - as of April 2021 EOG had 1,677 actively producing wells in New Mexico, as well as

155 permits on file with New Mexico's Oil Conservation Division to drill additional wells in the

future.[4]

To complete its business objectives, EOG hires "consultants" to perform the necessary

work.[5] Over the past three years, EOG employed dozens (or more) of individuals – including

Plaintiffs – as Water Consultants who performed work in the oilfield and were misclassified as

independent contractors.[6] These water consultants were charged with ensuring that EOG had

enough water to sustain its drilling and completions projects at its drill sites.[7] Plaintiff Hunter

Brown worked for EOG from 2014 until March of 2020.[8] Plaintiff Ronald Albritton worked for

EOG from August of 2012 until December 25, 2021.[9] Plaintiffs worked as water consultants for

EOG, working on various drilling rigs operated by EOG in Texas and New Mexico.[10] Plaintiffs

and the other water consultants were misclassified as an independent contractors, despite the fact

that they worked full time for EOG, and virtually every aspect of their job was controlled by

---

[2] See https://www.eogresources.com/company/history/. The Delaware Basin stretches across far West Texas and southwestern New Mexico.

[3] *See* EOG Form 10-Q Quarterly Report for quarter ending March 31, 2022, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/821189/000082118922000028/eog-20220331.htm, at p. 21.

[4] https://www.leacountytribune.com/2021/07/29/more-wells-more-fines/.

[5] Exhibit 2, Albritton Declaration, at ¶ 2.

[6] Exhibit 1, Brown Declaration, at ¶¶ 19-20; Exhibit 2, Albritton Declaration, at ¶¶ 4, 6.

[7] Exhibit 1, Brown Declaration, at ¶ 4; Exhibit 2, Albritton Declaration, at ¶ 2.

[8] Exhibit 1, Brown Declaration, at ¶ 2.

[9] Exhibit 2, Albritton Declaration, at ¶ 2.

[10] Exhibit 1, Brown Declaration, at ¶ 3; Exhibit 2, Albritton Declaration, at ¶ 2.

EOG.[11] Throughout their employment with EOG, Plaintiffs, and the other water consultants, received a flat day-rate with no overtime compensation for each day they worked.[12]

Despite the fact that this Court should not consider any merits-based arguments at this juncture, Plaintiffs anticipate that EOG will attempt to argue that Plaintiffs and the Water Consultants were independent contractors to whom the FLSA does not apply as a basis for its request the Court deny this Motion. At the current stage, this would be incorrect. Furthermore, EOG's treatment of all Water Consultants as independent contractors, regardless of which staffing company they worked through, furthers the argument that they were similarly situated.

### 1.    EOG water consultants had similar job duties and pay, and they share a common employment experience.

EOG's Water Consultants all share a common employment experience. While treating its Water Consultants as employees, EOG required them to work anywhere from 80 to 100 hours each week—well in excess of a 40-hour workweek.[13] Nevertheless, EOG paid each of them a day rate with no overtime pay for hours in excess of 40 each week.[14]

### 2.    EOG directed, controlled, and supervised its water consultants.

EOG maintained control of all aspects of its Water Consultants' work.[15] EOG's Water Consultants report to representatives of EOG on a daily basis.[16] EOG managed all aspects of the water consultants' jobs including the hours that they worked, their rate of pay, and how their pay

---

[11] Exhibit 1, Brown Declaration, at ¶¶ 5, 12, 14; Exhibit 2, Albritton Declaration, at ¶¶ 2, 3.

[12] Exhibit 1, Brown Declaration, at ¶¶ 9-11, 19-20; Exhibit 2, Albritton Declaration, at ¶¶ 4, 7.

[13] Exhibit 1, Brown Declaration, at ¶¶ 19-20; Exhibit 2, Albritton Declaration, at ¶¶ 4, 6.

[14] Exhibit 1, Brown Declaration, at ¶ 12; Exhibit 2, Albritton Declaration, at ¶ 3.

[15] Exhibit 1, Brown Declaration, at ¶¶ 19-20; Exhibit 2, Albritton Declaration, at ¶¶ 4, 6.

[16] Exhibit 1, Brown Declaration, at ¶ 5.

would be calculated.[17] EOG required the water consultants to adhere to strict guidelines, expectations, written policies and directives set by EOG.[18] Water consultants had to attend EOG safety meetings and other EOG-mandated training.[19]

### 3. EOG's water consultants did not risk their own investments or have any opportunity for profit or loss from EOG's operations.

EOG's Water Consultants made no significant monetary investment to do their work and were not held financially responsible for downtime.[20] EOG provided the oilfield equipment the Water Consultants worked on.[21] Water consultants were not allowed to hire "helpers," or other workers to help them complete their jobs - instead, if additional workers were needed, they were hired by EOG.[22] Water Consultants relied on EOG to provide them work, and the amount they made was dependent solely on the number of days they worked.[23] The water consultants did not negotiate their pay, instead it was dictated to them by EOG.[24]

### 4. EOG did not require its water consultants to have any specialized training, advanced degree or unique skill.

EOG's Water Consultants did not require unique skill, a degree, or experience to perform their job duties.[25] Many of the water consultants working that were working for EOG did not

---

[17] Exhibit 1, Brown Declaration, at ¶ 6.

[18] Exhibit 1, Brown Declaration, at ¶ 14; Exhibit 2, Albritton Declaration, at ¶ 2.

[19] Exhibit 2, Albritton Declaration, at ¶ 2.

[20] Exhibit 1, Brown Declaration, at ¶ 17.

[21] Exhibit 1, Brown Declaration, at ¶ 18.

[22] Exhibit 2, Albritton Declaration, at ¶ 5.

[23] Exhibit 1, Brown Declaration, at ¶¶ 11, 17.

[24] Exhibit 2, Albritton Declaration, at ¶ 3.

[25] Exhibit 1, Brown Declaration, at ¶ 15.

have college degrees, and they were often trained on the job.[26] Water Consultants' jobs involved monitoring water levels at EOG drill sites and ensuring that EOG had an adequate supply of water to allow for its drilling and completions operations.[27] Water Consultants had no input into the creation or modification of their job duties and were not empowered with any independent judgment or discretion to deviate from EOG's directives.[28]   The water consultants were not allowed to hire or fire anyone they worked with while working for EOG.[29]

## C.    ARGUMENT & AUTHORITIES

### 1.    Conditional certification of the FLSA collective is appropriate because the class is "similarly situated."

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated."[30] Under FLSA section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."[31] In the instant case, Plaintiffs and the Putative Class Members are similarly situated because they all: (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for EOG; (4) were all employees of EOG that it

---

[26] Exhibit 1, Brown Declaration, at ¶ 15.

[27] Exhibit 1, Brown Declaration, at ¶ 4; Exhibit 2, Albritton Declaration, at ¶ 2.

[28] Exhibit 1, Brown Declaration, at ¶ 16.

[29] Exhibit 1, Brown Declaration, at ¶ 13; Exhibit 2, Albritton Declaration, at ¶ 2.

[30] 29 U.S.C. § 216(b).

[31] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), cert. denied, 536 U.S. 934 (2002); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 117 S. Ct. 435 (1996).

mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) all performed work for EOG in the oilfield.[32]

Unlike a class action pursuant to Fed. R. Civ. P. 23, an employee in a collective action brought under FLSA § 216(b) is not a class member until he or she affirmatively opts-in to the collective action.[33] Thus, until similarly situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis. Therefore, it is critical that similarly situated employees are provided notice and an opportunity to opt-in as soon as possible, before their claims are reduced or extinguished by the passage of time.

### 2.    Courts within this Circuit use a two-stage approach for class certification.

Courts in this Circuit use a two-step method to assess whether to certify a collective action.[34] In *Thiessen*, the Tenth Circuit considered the conditional certification standards applicable to the ADEA, which are borrowed from the FLSA's opt-in class mechanism. The Tenth Circuit determined that the use of a two-step process for determining whether individuals were similarly situated was the "best approach" to determine if individuals were similarly situated for conditional certification purposes.[35]

---

[32] Exhibit 1, Brown Declaration, at ¶¶ 7-9, 12, 19-20; Exhibit 2, Albritton Declaration, at ¶¶ 3-4, 6-7.

[33] 29 U.S.C. § 216(b).

[34] *See Thiessen*, 267 F.3d at 1105; *Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *2 (D.N.M. Nov. 19, 2020) (collecting cases).

[35] *Id.*

The two-step approach has since been applied to numerous FLSA actions in this Circuit and District.[36] In the first stage, doing other than deciding whether notice should be issued (which doesn't require substantial allegations that the putative class members were together the victims of a single decision, policy, or plan) would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA.[37] It is important to note that the plaintiffs' claims and positions need not be identical to the potential opt-ins', only similar.[38] "At this initial 'notice' stage for conditional certification, a 'court may consider several factors ... including whether the potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct.'"[39] Furthermore, the plaintiff need only demonstrate "a reasonable basis" that a class of similarly situated persons exists.[40]

---

[36] *See e.g., Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR, 2020 WL 2768977, at *2 (D.N.M. May 28, 2020); *LeBlanc v. Halliburton Co.*, Civ. No. 17-0718 KG-GJF, 2018 WL 3999567, at *2 (D.N.M. Aug. 21, 2018); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1310-11 (D.N.M. 2017); *May v. E & J Well Service, Inc.*, No. 14–cv–00121–RBJ, 2014 WL 2922655, at *1-2 (D. Colo. Jun. 27, 2014); *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F.Supp.2d 1089, 1092 (D. Colo. 2005); *see also Lewis v. GEO Group, Inc.*, No. CIV-08-881-M, 2009 WL 3763821, at *1 (W.D. Okla. Nov. 9, 2009) ("The widely accepted procedure for conditional class certification under FLSA's opt-in class mechanism employs an undefined 'similarly situated' standard, rather than the class action standards of Federal Rule of Civil Procedure 23.").

[37] *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann- La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.' ").

[38] *Grayson*, 79 F.3d at 1096.

[39] *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *3 (D.N.M. Nov. 6, 2020) (*citing Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018)).

[40] *Grayson*, 79 F.3d at 1097; *see also, e.g., Ball v. Dynamic Support Servs., LLC*, No. 4:15- CV-036, 2015 WL 13751963 (D.N.D. Oct. 13, 2015) ("The requirement of a plaintiff attempting to conditionally certify a class of plaintiffs under the FLSA is 'merely [to] provide some factual basis from which the court can determine if similarly situated plaintiffs exist.'" *Halle v. Galliano Marine Svc.*, LLC, No. 15-5648, 2018 WL 1757343, at *3 (E.D. La. Apr. 12, 2018) (ordering conditional certification with one declaration in support).

In the second stage, "[o]nce the class members have been identified, the Court may reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis."[41]

Ultimately, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive."[42] Once the notice and opt- in period is complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset."[43]

### 3.    Plaintiffs have surpassed the minimum burden and made the required showing that water consultants at EOG are similarly situated for certification purposes.

In order for notice to be issued, some evidence of "a single decision, policy, or plan" should be presented.[44] "The court must determine whether the named and potential plaintiffs are "similarly situated" based on the allegations in the complaint, which may be supported by sworn statements.[45] In fact, Plaintiffs need to only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist.[46] Substantial evidence, documents, or

---

[41] *Hembree v. 3-D Oil Field Servs. & Rental, L.L.C.*, No. CIV 20-00343 RB/CG, 2020 WL 7642862, at *2 (D.N.M. Dec. 23, 2020) (*citing Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008)).

[42] *Sperling*, 118 F.R.D. at 406.

[43] *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989).

[44] *Thiessen*, 267 F.3d at 1102–03.

[45] *Deakin*, 328 F.R.D. at 432 (*citing Landry v. Swire Oilfield Services, L.L.C.*, 252 F.Supp.3d 1079, 1114–15 (D.N.M. 2017)).

[46] *Grayson*, 79 F.3d at 1097; *see also Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (Plaintiffs are similarly situated when they together were alleged victims of a "common policy or scheme or plan that violated the law).

declarations are not required for certification.[47] Plaintiffs have made a strong preliminary showing, through their well-pleaded Complaint, declarations, and documents in their possession that EOG subjected them and all other Water Consultants to the same compensation policies; and that these policies violated the FLSA. Plaintiffs have shown enough to demonstrate a reasonable inference that he and other Water Consultants were not paid for their overtime hours.

Here, Plaintiffs are similarly situated to the Water Consultants because they were all subject to a common, illegal compensation plan. Specifically, Plaintiffs and the Water Consultants are similarly situated because EOG misclassified its oilfield workers as independent contractors and paid them a flat daily rate for all hours worked, regardless of their location or staffing company.[48] This type of pay scheme has been recognized as a violation of the FLSA.

Plaintiffs anticipate that EOG will argue that this case is inappropriate for certification by suggesting the inquiry is inherently "individualized" or "fact-intensive." But in evaluating conditional certification, "[i]t is well established that individual questions...will not defeat class certification...."[49] Questions of management issues are for the second stage analysis after discovery.[50] The argument anticipated from EOG is undermined by the fact that EOG classified all of the Water Consultants as independent contractors in one fell swoop, without examining each individual's job duties, pay, staffing company, or other employment provisions. Accordingly, all the Water Consultants' overtime claims are based on a "single decision, policy,

---

[47] *Id.*; *see also Ortiz v. Rain King, Inc.*, 2003 WL 23741409 (S.D. Tex. June 25, 2002) (one declaration sufficient); *Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807, 810-11 (S.D. Tex. 2003) (one declaration plus employer documents sufficient); *Alba v. Madden Bolt Corp.*, C.A. 4:02-cv-01503, 2002 WL 32639827 (S.D. Tex. June 5, 2002) (Hoyt J.) (one declaration sufficient).

[48] Exhibit 1, Brown Declaration, at ¶ 20; Exhibit 2, Albritton Declaration, at ¶ 2.

[49] *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *4 (D.N.M. Apr. 20, 2016) (*quoting Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004)).

[50] *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006)).

or plan"—that EOG unlawfully misclassified consultants as independent contractors in an effort to avoid paying them overtime, in violation of the FLSA.[51]

### 4.    Merits-based arguments are not relevant when deciding conditional certification.

This Could should not deny conditional certification solely based on a disagreement about the merits of Plaintiffs' claims. At this stage, "the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims."[52] "These types of inquiries are more appropriately considered in a motion to decertify the class once discovery has been completed."[53]

EOG will likely also argue that the evaluation of liability and damages would require inherently individualized inquiries. But "[w]ithout a complete record post-discovery, the Court cannot definitely pass judgment on [such] arguments."[54] EOG may also argue that certification is not proper because the water consultants were hired by and/or paid through different staffing companies. But these arguments apply more to a merits-based determination, which is not

---

[51] *Thiessen*, 267 F.3d at 1102–03; *see also Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

[52] *Aguilar v. Mgt. & Training Corp.*, CV 16-050 WJ/GJF, 2017 WL 4277139, at *3 (D.N.M. Jan. 27, 2017) (Fourrat, M.J.); *Kerr*, 2020 WL 6799017, at *4 (rejecting argument that "individualized compensation decisions preclude any single decision, policy, or plan applicable to all contractors" as going to the merits); *Buffington v. Ovintiv USA Inc.*, Civ. No. 20-cv-02477-RM-STV (D. Col. July 16, 2021) (granting conditional certification for all safety consultants misclassified as independent contractors and paid a day rate, rejecting arguments that certification should be denied or that class should be more limited, finding that "[a]t this stage, the Court does not resolve factual disputes.").

[53] *Ball v. Dynamic Support Servs., LLC*, 2015 WL 13751963, at *3.

[54] *Ball*, 2015 WL 13751963, at *3.

appropriate at this conditional certification stage.[55] The bottom line is that the merits of Plaintiffs'

claims and any anticipated defenses raised by EOG can be resolved on a class-wide basis. For

example, Plaintiffs anticipate that EOG will plead its decisions were undertaken in good faith

and were not committed willfully or with reckless disregard of the FLSA. By pleading defenses

applicable to all Water Consultants as a class, EOG will be acknowledging that these issues can

be determined as issues common to the class.[56]

---

[55] *See Olivas v. C & S Oilfield Servs., LLC*, 349 F. Supp. 3d 1092, 1111 (D.N.M. 2018) ("[T]hat proposed class members held different job titles does not mean that they are not similarly situated."); *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2005 WL 1799208, at *4 (D. Kan.) (holding variations in employees' specific job duties did not defeat conditional certification because they shared general duties and injuries arose from employer's failure to pay overtime); *Kibodeaux v. Wood Group Prod. and Consulting Servs.*, Inc., Civ. A. No. 4:16-CV-3277, 2017 WL 1956738, at *3 (S.D. Tex. May 11, 2017) (the economic realities test argument is "a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage[.]"); *Robertson v. Whitman Consulting Org., Inc.*, No. 19-CV-02508-RM-KLM, 2020 WL 5097597, at *1 (D. Colo. July 22, 2020), report and recommendation adopted as modified, No. 1:19-CV-02508-RM-KLM, 2020 WL 5096006 (D. Colo. Aug. 28, 2020)("Courts do not review the underlying merits of the action in deciding whether to conditionally certify a class."); *Field v. Anadarko Petroleum Corp.*, No. 4:20-CV- 00575, 2020 WL 6075633, at *1 (S.D. Tex. Oct. 15, 2020) ("At no point during the notice stage of conditional certification should a court look to the merits of the lawsuit's allegations."); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK (D.N.M. Dec. 10, 2021) (certifying class of completions and drilling consultants who were misclassified as independent contractors and paid a day rate, finding "Defendant's argument regarding the 'economic realities' and the 'individualized' determination for each employee goes to either the second stage of the analysis or to the merits of the case.").

[56] *See Gee v. Suntrust Mortgage, Inc.*, No. C-10- 1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011) (holding "[u]niform exemption classifications" and other "standardized corporate policies and procedures" represent relevant factors in evaluating class certification, as they may indicate employees' job duties are similar).

**5.    Independent contractor misclassification cases are well-suited for certification.**

Courts in this Circuit have routinely found allegations of misclassification as independent contractors to be a common policy or plan for purposes of conditional certification.[57] Courts throughout the nation have reached the same conclusion.[58]

**6.    Court-authorized notice is appropriate in this case.**

In addition to an order conditionally certifying this collective action, Plaintiffs respectfully request the Court-authorized notice be sent by mail, email, and text message to all Water Consultants who work or have worked at EOG from three years from the date of the

---

[57] *E.g., LeBlanc*, 2018 WL 3999567, at *2 (all independent contractor directional drillers nationwide); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (all drilling consultants nationwide); *Geiger v. Z-Ultimate SelfDefense Studios LLC*, C.A. No. 14-cv- 00240-REB-NW, 2015 WL 1090181, at *3 (D. Colo. Mar. 10, 2015) (self-defense class instructors); *May v. E & J Well Svc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. Jun. 27, 2014) (flow testers); *McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *4-5 (D. Kan. Aug. 27, 2009) (loan officers); *Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446, at *2 (D. Kan. Feb. 26, 2009) (construction workers); *Lewis v. ASAP Land Exp., Inc.*, C.A. No 07-2226-KHV, 2008 WL 2152049, at *1 (D. Kan. May 21, 2008) (delivery drivers).

[58] *E.g., Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514, at *7 (E.D. Mo. Oct. 29, 2019) (all satellite installation technicians); *Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863, at *4 (D. Neb. Sept. 19, 2018) (all welders), rep. and rec. adopted by 2018 WL 5724043 (D. Neb. Nov. 1, 2018); *Hernandez v. Apache Corp.*, No. 4:16- cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) (all day rate independent contractors, regardless of position); *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *6 (E.D. Pa. Nov. 29, 2016) (exotic dancers); *Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078, at *9 (W.D. Pa. Oct. 26, 2016) (delivery drivers); *Tegmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1025 (S.D. Iowa 2016) (all delivery drivers across several states); *Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868, at *5 (D.N.J. Dec. 12, 2014) (paramedical exam providers); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (all day-rate independent contractors, regardless of job position); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians).

certification order to the present, and set the notice period at 90 days.[59] To facilitate the Notice process and preserve the rights of those who have not yet opted- in, Plaintiffs proposes the attached Notice and Consent Form for approval by the Court. Plaintiffs seek to notify the following group of putative class members:

> All water consultants working for EOG during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime.[60]

While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, district courts "have discretion, in appropriate cases, to implement [§ 216(b)]...by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."[61] These methods of distribution are routinely approved by this Court and other courts, and should be approved here. Email notice has become an accepted—and even embraced—form of notice in FLSA collective actions.[62]

Further, Plaintiffs submit that text message notice is appropriate here because the nature of EOG's work requires Water Consultants to be away from their homes for long periods of

---

[59] a 90 day notice period is reasonable.  *See, e.g., Jackson v. Powersat Communications (USA) LP*, No. 2:20-cv-486 KRS/GJF (D.N.M. July 14, 2021) (opinion from Judge Sweazea approving 90 day notice period); *Darrow v. WKRP Mgmt., LLC*, No. 09-cv-01613-CMA-BNB, 2012 WL 638119 (D. Colo. Feb. 28, 2012) (permitting 90 day period); *German v. Holtzman Enterprises, Inc.*, cv-03540-PAB-STV (D. Col. March 22, 2021) (approving 90 day notice period, finding "[t]he Court agrees with plaintiffs that the COVID-19 pandemic, which has resulted in delays in mail delivery and among numerous other disruptions to daily life, is sufficient grounds to permit a ninety day period.); *Bland v. PNC Bank, N.A.*, 2015 WL 7587365, at *3 (W.D. Pa. Nov. 25, 2015) (finding that "a notice period of 100-days is sufficient ... and that Plaintiffs' counsel's plan to send the notice by email and U.S. Mail is reasonable").

[60] Plaintiffs' class definition in their Original Complaint excluded those water consultants that were hired by Bedrock PC 1099, LLC, as a separate class and collective action against EOG and Bedrock had been filed in the Southern District of Texas by Chad Porter.  However, Mr. Porter subsequently agreed to arbitrate his claims on an individual basis against Bedrock.  As such, there is no longer any reason to exclude those water consultants that were hired by Bedrock in this collective.

[61] *Hoffman-LaRoche*, 493 U.S. at 169.

[62] *See Landry*, 252 F.Supp.3d at 1128–31 (granting notice by mail, email and text where employees were dispersed to various sites around the country and were away from their homes and addresses of record for weeks or months at a time); *Calvillo*, 267 F. Supp. 3d at 1315; *Valencia*, 2020 WL 2768977, at *4 (same).

time.[63] "[I]n the world of 20[21], email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus [ ] using email and texts to notify potential class members is entirely appropriate."[64] "[N]otice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."[65]

Attached as Exhibit 3 is Plaintiffs' proposed Judicial Notice, proposed Email Notice, and Plaintiffs' proposed Text Message Notice. Accordingly, Plaintiffs respectfully request that these forms of notice be adopted.

### 7.     A three-year notice period is appropriate.

The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act.[66] This Court routinely approves a three-year notice period.[67]

### 8.     Disclosure of names and contact information is required.

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiffs requires discovery of the names and contact information for those individuals. Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA authorizes the Court

---

[63] Exhibit 1, Brown Declaration, at ¶ 22.

[64] *Vega v. Point Security, LLC*, No. A-17- CV- 049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017), rpt. and rec. adopted 2017 WL 8774233 (Oct. 12, 2017); *see also Landry*, 252 F. Supp. at 1130; *Buffington v. Ovintiv*, *supra*, ("notice by text, e-mail, and mail is reasonable, especially since the safety consultants work far afield at jobsites.").

[65] *Kerr*, 2020 WL 6799017, at *6.

[66] *See* 29 U.S.C. § 255(a).

[67] *Zamora v. Sw. Glass & Glazing, Inc.*, No. 1:15-CV-01041-RJ, 2016 WL 10516172, at *3, FN 2 (D.N.M. Aug. 23, 2016) (permitting plaintiff to send notice to workers employed by defendant up to three years from the date the notice is issued); *Valencia*, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020); *Landry*, 252 F. Supp. at 1131 (conditionally certifying a class of all of defendant's current and former operators during the last three years).

to manage the collective action, including the power to authorize notice and monitor preparation and distribution of the notice.[68] "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action."[69] In short, the FLSA empowers and encourages this Court to issue notice to all potential plaintiffs, and it should do so in this case.

Accordingly, Plaintiffs respectfully request that the Court direct EOG to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for all members of the proposed collective.[70]

## D.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) order EOG to provide the names, last known addresses, telephone numbers, e-mail addresses (business and personal), work locations, and dates of employment of all putative class members; and (3) authorize Plaintiffs' counsel to send court-approved notice to all of the members of the proposed class via mail, email and text message, as requested herein.

---

[68] *Hoffman-LaRoche*, 493 U.S. 165 at 169-73.

[69] *Id*. at 172.

[70] *See Pruess*, 2020 WL 6544243, at *8 (directing defendant "to produce the names, job titles, start and end dates, last known addresses, personal e-mail addresses, and telephone numbers for all salaried 'health plan side' CCE employees over the last three years"); *Landry,* 252 F. Supp. at 1086 (ordering defendant to produce "the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), and dates of employment for all the class members" within ten days); *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2013 WL 11336856, at *9 (D.N.M. Sept. 24, 2013) (ordering defendant to produce to plaintiffs a list of the names and last known addresses (in electronic format, if available) of all current and former employees who worked for the City").

Respectfully submitted,

*/s/ Josh Borsellino*
Josh Borsellino
TX State Bar No. 24045532
Borsellino, P.C.
1020 Macon St., Suite 15
Fort Worth, Texas 76102
Telephone: (817) 908-9861
Facsimile: (817) 394-2412
Email: josh@dfwcounsel.com

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 27 and June 28, 2022, I conferred with EOG's counsel regarding the relief requested herein.   Despite the parties' good faith efforts, an agreement regarding this Motion could not be reached.  Accordingly, it is presented to the Court as opposed.

/s/ Josh Borsellino

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on counsel of record via the District of New Mexico ECF email system.

/s/ Josh Borsellino