# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| HUNTER BROWN AND | § | |
| RONALD ALBRITTON, | § | |
| Individually and On Behalf of All | § | |
| Others Similarly Situated, | § | CASE NO. 2:22-CV-00116-KRS-SMV |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| EOG RESOURCES, INC.; | § | COLLECTIVE AND CLASS ACTION |
| Defendant. | § | |
| | § | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION

Josh Borsellino
TX State Bar No. 24045532
**Borsellino, P.C.**
1020 Macon St., Suite 15
Fort Worth, Texas 76102
Telephone: (817) 908-9861
Facsimile: (817) 394-2412
Email: josh@dfwcounsel.com

**ATTORNEY FOR PLAINTIFFS AND OTHERS SIMILARLY SITUATED**

A.    INTRODUCTION

Plaintiffs provided substantial allegations and evidence that EOG classified its Water Consultants as independent contractors and paid them a day rate for their services. Plaintiffs have shown that the day-rate Water Consultants are subject to extensive control by EOG, and are similarly situated regardless of specific staffing company, job duties, or any other allegedly individualized factor. Plaintiffs' allegations are more than sufficient for conditional certification.[1] The Court should reject EOG's arguments regarding the merits of its independent contractor defense, and its request to have the court weigh evidence, as premature.[2] The Court should conditionally certify this matter under the FLSA and authorize notice be sent to other Class members so they have the opportunity to join before their statute of limitations expires.

B.    PLAINTIFFS AGREE TO EXCLUDE THE BEDROCK CONSULTANTS

EOG argues that it would be improper to include water consultants who were hired by Bedrock and performed services for EOG in the proposed class. Plaintiffs believe there would be no prejudice to EOG if these workers were included in the class because no discovery has occurred in this case or the *Porter* case, and the evidence provided by Plaintiffs supports the inclusion of the Bedrock workers. However, in an effort to streamline the issues in dispute here, Plaintiffs agree to exclude the Bedrock workers from the proposed class. Thus, Plaintiffs request certification of the class proposed in its Original Complaint, which is: "All water consultants

---

[1] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (in the Tenth Circuit, conditional certification "require[s] nothing more than substantial allegations that the class members were together the victims of a single decision, policy, or plan.").
[2] *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (holding the district court, in making a class certification decision, must avoid focusing on the merits of the underlying case); *Medrano v. Flowers Foods, Inc.*, No. CV 16- 350 JCH/KK, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017) (same).

working for EOG during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime, except those hired through Bedrock PC 1099, LLC."

## C.   PLAINTIFFS SATISFY THEIR BURDEN UNDER *THIESSEN*

In the Tenth Circuit conditional certification "require[s] nothing more than substantial allegations that the class members were together the victims of a single decision, policy, or plan."[3] Plaintiffs' burden requires "no actual evidence to be presented but only 'substantial allegations,' through, for example, allegations in the Complaint and 'sworn statements.'"[4] Plaintiffs provided substantial allegations and evidence showing EOG classified a large group of Water Consultants as independent contractors and paid them on a day rate basis without overtime pay.[5] The declarations are based on Plaintiffs' personal knowledge from their long-term experience working for EOG - Brown worked for EOG for six years, and Albritton worked for EOG for nine years.[6] That the Plaintiffs did not provide detailed, granular descriptions of job activities of the members of the proposed class does not defeat certification.[7] That is particularly true here, where Plaintiffs seek certification of a class with a single job title, all classified as independent contractors, and all paid day rates.

---

[3] *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F.Supp.3d 1079, 1086 (D.N.M. 2017) (quoting *Thiessen*, 267 F.3d at 1102 (emphasis added)); *Bruback v. City of Albuquerque*, No. 10-CIV-01113-MV- ACT, 2012 WL 12863340, at *3 (D.N.M. Feb. 6, 2012) (Plaintiffs' burden is "very lenient" and "typically results in certification for the purpose of notifying potential plaintiffs.").

[4] *Id*. (citing *Calvillo v. Bull Rogers, Inc.*, 267 F.Supp.3d 1307, 1312 (D.N.M. 2017) (explaining that "similarly situated inquiry...requires only a colorable basis showing the class members are victims of a single decision, policy or plan").

[5] *See* Declarations of Hunter Brown and Ronald Albritton, Exhibits 1 and 2 to Motion to Certify.

[6] *Id*.

[7] *See Salinas-Rodriguez v. Alpha Servs., L.L.C.*, No. AGN, 2005 WL 3557178, at *3 (S.D. Miss. Dec. 27, 2005) ("Plaintiffs cannot be expected to have an elaborate knowledge of the circumstances facing other [potential class members]. If the Court required more proof at this notice stage, it would be overlooking the purpose behind the two-stage inquiry.")

EOG attacks Plaintiffs' evidence regarding the similarly-situated nature of the class members as based on hearsay. But a plaintiff "is qualified to indicate ... that there were others who did similar work for [the defendant] and who, to his knowledge, did not receive[] overtime compensation for hours worked in excess of 40 hours per week."[8] So, at the conditional certification stage, "it is reasonable to infer...[Plaintiffs] had personal knowledge of the employment conditions of other [water consultants] based upon [their] own observations and experiences during their employment."[9] Courts in this Circuit have relied upon a plaintiff's discussions with others to find that there are substantial allegations that the plaintiff and the putative opt-in plaintiffs were together the victims of a single decision, policy, or plan.[10] Moreover, declarations submitted at the notice stage need not be admissible at trial.[11] A finding otherwise would "defeat the purpose of the two-stage analysis," since the first stage sets a purposefully low bar that typically results in conditional certification.[12] In fact, courts "routinely credit allegations based on observations and discussions with fellow workers."[13]

Plaintiffs establish they and the class members are similarly situated because they all: (1) were classified as independent contractors; (2) were paid a day-rate with no overtime; (3) regularly worked more than 40 hours each week; and (4) performed sufficiently similar job duties as Water Consultants managing EOG's water supplies for its drilling and production

---

[8] *Daughtery v. Encana Oil & Gas*, 838 F.Supp.2d 1127, 1133 (D. Col. 2011); *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F.Supp.2d 832, 846 (S.D. Tex. 2011) (employees "can generally be expected to have some personal knowledge of conditions and events during [their] employment").

[9] *Lee v. Metrocare Services,* 980 F.Supp.2d 754, 764 (N.D. Tex. 2013).

[10] *Murphy v. Allstaff Med. Res., Inc.*, No. 16-CV- 2370-WJM-MEH, 2017 WL 6945036, at *2 (D. Colo. June 13, 2017); *Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614-CVE-TLW, 2015 WL 222486, at *2 (N.D. Okla. Jan. 14, 2015).

[11] *Swartz v. D-J Engineering, Inc.*, No. 12-CV-1029-JAR, 2013 WL 534585, *4 (D. Kan. Sept. 24, 2013).

[12] *Daugherty*, 838 F. Supp. 2d at 1133.

[13] *Id*. at 4 ("Further, Defendants' argument that [Plaintiff's] declaration should not be considered due to "hearsay" issues is unpersuasive.").

operations.[14] EOG does not dispute any of this, and its declarations actually *confirm* that there is a large group of Water Consultants classified as independent contractors and paid on a day rate basis, and that these workers performed similar job duties. And EOG does not even attempt to refute Plaintiffs' testimony that they and the other Water Consultants:

- Were subject to "strict guidelines, expectations, written policies and directives set by EOG."
- Had to attend EOG safety meetings and other EOG-mandated training.
- Could not take other employment while working for EOG, because they typically worked 80-100 hours per week while at EOG.
- Could not hire other workers to complete their assignments while working for EOG.[15]
- Were not required to have any unique skill, a degree or experience to perform their jobs, and were often trained on the job.
- Reported to EOG representatives on a daily basis.
- Did not make any monetary investment to perform their job duties and that EOG provided most, if not all, of the equipment needed to complete their jobs.[16]

EOG's silence on these common facts is deafening. These undisputed commonalities among the class members reflect the high degree of control exercised by EOG over these workers, and thus (unlike EOG's alleged minor distinctions among the workers discussed below) are highly relevant to the ultimate legal issue of whether they were employees of EOG. Plaintiffs' evidence more than meets the lenient standard for conditional certification.

**D.     THE COURT SHOULD REJECT EOG'S MERITS-BASED ARGUMENTS**

EOG effectively claims, because there were multiple staffing companies, and that these companies were the ones who "actually" paid and classified these workers, there is no common policy to support a finding Plaintiff is similarly situated to the rest of the proposed collective. EOG also relies upon minor distinctions between the day rate workers that are legally

---

[14] *Id*.
[15] Albritton Declaration at ¶¶ 2, 3, 5.
[16] Brown Declaration at ¶¶ 5, 15, 17-18.

inconsequential to the ultimate issue of whether they were employees of EOG. Both of these arguments go the merits of the case and can and should be addressed after merits-based discovery has occurred, as "such challenges are appropriately raised at the stricter second stage...after discovery is completed and the evidence is more fully developed."[17]

**1. Whether EOG or its staffing companies "employed" Plaintiffs and the class members goes to the merits**

EOG's attempt to shift the blame to its staffing companies (which it calls "vendors") goes to the merits of this case (e.g., whether EOG "employed" Plaintiff and the Class members and/or properly classified them as independent contractors) and is premature at the notice stage.[18] The Court should reject EOG's contention that conditional certification is inappropriate because it used an intermediary to pay the workers.[19] EOG also speculates that some vendors could have had some of the class members sign arbitration agreements, and that their insurance requirements may have been different from Plaintiffs.[20] Such speculation cannot defeat certification. In the Tenth Circuit, conditional certification is appropriate when there are "***substantial allegations*** that the class members were together the victims of a single decision, policy or plan."[21]

EOG's reliance on *Nelson v. FedEx* is misplaced. Unlike here, the plaintiff in *Nelson* alleged he was employed by an independent service provider (ISP) whom the defendant relied on to deliver packages and failed to allege the defendant bound its ISPs to a single action, plan, or

---

[17] *Hancock v. Lario Oil & Gas Co.*, No. 219CV02140JARKGG, 2019 WL 3494263, at *2–3.

[18] *Adamson*, 855 F.2d at 676 (courts must avoid focusing on the merits of the underlying case when deciding conditional certification); *see also Williamson v. Ameriflow Energy Servs. L.L.C.*, No. CV 15-878 MCA/GJF, 2016 WL 10179250, at *3 (D.N.M. Sept. 15, 2016)(same).

[19] *Field v. Anadarko Petroleum Corp.*, No. 4:20-CV-00575, 2020 WL 6075633, at *4 (S.D. Tex. Oct. 15, 2020) ("[a]lthough [Defendant] strongly disputes that it knew that its consultants were paid a day-rate without overtime pay, that is neither here nor there for conditional certification purposes.").

[20] Dkt. No. 23 at p. 16.

[21] *Thiessen*, 267 F.3d at 1102.

policy.[22] The plaintiff alleged the defendant and ISPs worked closely together to determine third-party employee compensation. Here Plaintiffs allege **EOG** misclassified its day-rate workers as independent contractors when they were EOG's employees and that EOG dictated their classification and compensation.[23] Although EOG disputes Plaintiffs' allegations, those arguments go to the merits, which are not to be considered at the conditional certification stage.[24]

**2. Alleged, minor, legally insignificant differences in staffing companies, job duties, and geographic location do not defeat conditional certification**

EOG argues the class members are not similarly situated because they were staffed through several staffing companies, worked in different positions, allegedly performed slightly different job duties, and worked in a few different locations.[25] But the question is whether these distinctions are consequential to a determination of whether the class members are employees or independent contractors, and prior courts have found they are not.

**a. Different staffing companies do not affect conditional certification**

Like EOG's other premature merits-based arguments, "[t]o the extent [EOG] wishes to raise factual challenges to whether putative plaintiffs hired by various staffing companies are similarly situated, such challenges are appropriately raised at the stricter second stage...after discovery is completed and the evidence is more fully developed."[26] Courts routinely certify

---

[22] *See also Buffington v. Ovintiv* (rejecting defendant's reliance on *Nelson* for the same reasons expressed herein).

[23] *See* Doc. 1.

[24] *Adamson*, 855 F.2d at 676;

[25] EOG also states that some Water Consultants were paid hourly. Dkt. No. 23 at pl 6. But this is completely irrelevant - only day rate workers are included in Plaintiffs' proposed class. *Tuggle v. Rockwater Energy Sols., Inc.*, No. H-18-4746, 2019 WL 7040330, at *2 (S.D. Tex. Dec. 3, 2019) ("[Defendant's] contentions that some contractors were paid hourly is not relevant to the claims at issue, as only day-rate contractors are included in the putative class.").

[26] *Hancock v. Lario Oil & Gas Co.*, No. 219CV02140JARKGG, 2019 WL 3494263, at *2–3 (D. Kan. Aug. 1, 2019) ("the role of third-party staffing companies is not at issue at this initial notice stage.").

collective actions of workers classified as independent contractors who were staffed to the alleged employer by multiple different staffing companies.[27] In *Field v. Anadarko Petroleum Corp.*,[28] the plaintiff sought to certify a collective class of oilfield workers "employed by, or working on behalf of, Anadarko who were classified as independent contractors and paid a day-rate." Like here, the defendant attempted to rely on its use of multiple staffing companies to defeat certification. The Court rejected this contention:

> Anadarko argues that at least 11 different staffing companies bore the responsibility of paying the class members. According to Anadarko, this decentralized compensation scheme means no common policy can be identified to support a finding that the class members are similarly situated. I completely disagree. In my mind, it does not matter if there were two, 10, or 100 staffing companies involved. All that matters at this juncture is that Field has sufficiently alleged that he and similarly situated class members were the victims of a single pay policy: a failure to pay overtime to those classified as independent contractors and paid a day-rate. Field claims that the common pay practice utilized by Anadarko, through the staffing companies, was to classify class members as independent contractors, pay the class members a day-rate, and require the class members to work more than 40 hours per week without paying overtime. This uniformly applied day-rate pay practice, which Field claims is a per se violation of the FLSA, is particularly appropriate for conditional certification.[29]

Similarly, in *Buffington v. Ovintiv USA, Inc.*,[30] the court certified a nationwide class of oilfield safety consultants who were paid a day rate and classified as independent contractors. The court specifically rejected Ovintiv's argument that the use of multiple staffing companies made certification inappropriate, noting that "Plaintiff alleges that safety consultants were all

---

[27] *See, e.g., O'Quinn v. TransCanada USA Servs., Inc.*, 469 F.Supp.3d 591, 607–08 (S.D.W. Va. 2020) (certifying class of inspectors working through various vendors for an oil and gas producer that were classified as independent contractors and paid day rates); *Baucum v. Marathon Oil Corp.*, Civ. A. No. H-16-3278, ECF No. 24, at p. 22 (S.D. Tex. July 14, 2017) (conditionally certifying nationwide class of oilfield workers staffed to Marathon through numerous staffing companies who worked in multiple job positions and locations throughout the United States).

[28] No. 4:20-CV-00575, 2020 WL 6075633 (S.D. Tex. Oct. 15, 2020).

[29] Field, 2020 WL 6075633, at *3.

[30] 2021 WL 3021464 (D. Col. July 16, 2021).

misclassified as independent contractors when they were in fact Defendants' employees and that Defendants dictated their compensation. Although Defendants dispute and challenge these allegations, these arguments mainly go to the merits of the case or the stricter second standard."[31]

Here, EOG claims there were 21 staffing companies. EOG asserted its independent contractor defense across the board, regardless of staffing company.[32] But Hunter Brown confirms though sworn testimony that all Water Consultants (regardless of whether they worked through their own LLC or through larger staffing companies) were subject to same training, policies and procedures (safety policies, safety training, and any all other corporate policies of EOG).[33] They were subject to the same control by EOG, were treated the same by EOG, and subject to the same supervision by EOG representatives, as those who worked through staffing companies.[34] This day rate scheme, common to Plaintiffs and all Class members, demonstrates how well-suited this matter is for collective treatment. The Court should grant Plaintiffs' Motion.

### b. Plaintiff and the class members do not need identical job duties or the exact same daily rate to be similarly situated

Plaintiffs are not required to show their job duties were identical to those performed by the class members - in fact, "arguments comparing job duties are [also] premature" and are more appropriately considered at the second stage.[35] This is especially true here, where Plaintiff

---

[31] *Id*. at *3.

[32] See EOG's Original Answer, Dkt. No. 4 at p. 12, Affirmative Defense No. 5 ("Plaintiffs and the class members provided services to EOG through third-party vendors. They worked as independent contractors. To the extent anyone was their employer, it was the third-party vendors and not EOG.")

[33] *See* Exhibit A at ¶ 5.

[34] *Id*.

[35] *See, e.g., Medrano*, 2017 WL 3052493, at *3 ("Any variation in the class members' job responsibilities is a factor to be considered at the second stage of the analysis after completion of discovery."); *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *6 (D. Kan. Sept. 24, 2013) (identical job duties are not required); *Calvillo*, 267 F.Supp.3d at 1312 (Plaintiff need only show he is "similarly," not "identically," situated to the class members).

alleges EOG's day-rate compensation plan is a per se violation of the FLSA and does not necessarily depend on the job title or job responsibilities of each plaintiff (though they are sufficiently similar here).[36] The cases cited by EOG in its attempt to show certification should not be granted in independent contractor oilfield cases are readily distinguishable.[37] Here, unlike in *Mathis*, the class is well-defined - the proposed class consists of a single job title (Water Consultant), and the Class members' job duties were described by Plaintiffs in their Declarations.[38] No such bars to certification exist here. Contrary to EOG's assertions, conditional certification is routinely granted to similar classes of oilfield workers.[39]

EOG also points out that Brown was paid $700 per day and Albritton received $775 per day, and argues that this minor variation is evidence that day rates were "negotiated," and thus the class members are not similarly situated.[40] Plaintiffs dispute, through their sworn testimony, that they or other class members negotiated their day rate with EOG.[41] And in any event, courts

---

[36] *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *3 (W.D. Tex. Oct. 5, 2015) (conditionally certifying class of day-rate workers classified as independent contractors regardless of job position where, as here, plaintiffs alleged they were all paid a day-rate).

[37] *See* Doc. 23 at 22; *Mathis v. Stuart Petroleum Testers, Inc.*, No. 5:16-CV-094-RP, 2016 WL 4533271 (W.D. Tex. Aug. 29, 2016) (denying conditional certification where proposed class was vaguely defined and no facts regarding underlying job duties was provided to assist in defining the class).

[38] *See* Doc. No. 18-, Exhibits 1 and 2 - Plaintiffs describing their job duties.

[39] *See, e.g., Buffington*, 2021 WL 3021464; *LeBlanc v. Halliburton Co.*, No. CV 17-0718 KG-GJF, 2018 WL 3999567, at *2 (D.N.M. Aug. 21, 2018) (all independent contractor directional drillers nationwide); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (all drilling consultants nationwide); *Young v. Energy Drilling Co.*, No. 4:20-CV-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) (despite having different job duties, certifying class of hourly paid oil-field workers because the workers were subject to the same pay practice); *Rossman v. EN Eng'g, LLC*, No. 19-CV- 05768, 2020 WL 5253861, at *5 (N.D. Ill. Sept. 3, 2020) (conditionally certifying nationwide class of Inspectors and Project Consultants regardless of type or craft); *O'Quinn*, 469 F.Supp.3d 591 (same).

[40] Dkt. No. 23 at pp. 6, 10, 15.

[41] Albritton Declaration at ¶ 3, Brown Declaration at ¶ 6.

have found conditional certification proper where employees were paid different rates, as long as the pay policy (i.e. the payment of day rates without overtime) is common to the class.[42]

### c. Geographic Commonality Is Not Required

It is well-established that geographic "commonality" is not necessary to satisfy the FLSA's "similarly situated" requirement when the workers were impacted by a common policy.[43] Further, here, EOG performed work in a limited geographic area – only two shale formations in Texas and in Colorado.[44] While EOG attempts to make much of the fact that Water Consultants in these three different regions may have focused on reused water or fresh water, and may have worked alone or worked with other Water Consultants,[45] it does not explain, nor is it readily apparent, why this would be consequential on the ultimate issue of whether the workers are employees or independent contractors. And in his declaration attached hereto,[46] Hunter Brown testifies that he handled both fresh and reuse water, that other water consultants were capable of doing so as well, and that it was not uncommon for Water Consultants to switch between handling fresh and reuse water. In fact, many Water Consultants transferred between EOG's geographic regions - Mr. Brown specifically identifies JD McGuire, Galan Kelly, Cade Riley,

---

[42] *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 992-93, 996 (E.D. Tex. 2011) (finding the same pay policy affected opt-in plaintiffs who were subject to different pay rates); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (finding that employees were all paid less than minimum wage and thus were all subject to the same pay policy, although they received different amounts of pay).

[43] *Landry*, 252 F.Supp.3d at 1125; *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017); *Baucum v. Marathon Oil Corp.*, Civ. A. No. H-16-3278, ECF No. 24, at p. 22 (S.D. Tex. July 14, 2017) (conditionally certifying nationwide class of oilfield workers staffed to Marathon through numerous staffing companies who worked in multiple job positions and locations throughout the United States).

[44] Doc. 23 at p. 4.

[45] EOG also claims it waived insurance requirements for Brown and Albritton. But it does not say whether other water consultants were required by EOG to carry their own insurance. Thus this is not evidence of any difference between Plaintiffs and the proposed class.

[46] Mr. Brown's Declaration is attached as Exhibit A.

John Brown and Blake Fontenot as Water Consultants who all transferred from one geographic region to another while working for EOG.

Plaintiffs have alleged and sworn that there were company-wide commonalities among the Water Consultants in the method of pay (day rates) and the extent of control exercised by EOG, as described in the bullet-pointed list in Section C, above. EOG does not even attempt to show any geographic differences between the Water Consultants with respect to these alleged (and sworn) facts. At the end of the day, Plaintiffs have shown, and EOG does not dispute, that there is a common pay scheme and a common amount of control exercised by EOG that applies across the board among Water Consultants that work for EOG. Thus any limited differences in location do not prevent conditional certification here.

E. **DEFENDANT'S OBJECTIONS TO THE PROPOSED NOTICE**

EOG raises several objections to Plaintiffs' proposed notice and asks for an opportunity for additional briefing on the notice if conditional certification is granted. But the Court should reject EOG's request to further delay Putative Class Members from receiving notice by requiring the parties to further confer regarding Plaintiffs' proposed notice.[47] Plaintiffs will agree to make three modifications proposed by Defendant. The other three objections have been soundly rejected by courts in this circuit. Plaintiff briefly addresses each objection below.

- First, while EOG argues it does not have the information and Plaintiffs should bear the burden of gathering information from staffing companies, Courts routinely order defendants to produce this data.[48] As the court ordered in *Buffington v. Ovintiv*, EOG

---

[47] *Pruess v. Presbyterian Health Plan, Inc.*, 2020 WL 6544243, at *5 (D.N.M. Nov. 6, 2020) (denying the defendant's request to meet and confer regarding plaintiff's proposed notice; reasoning time is of the essence and "Plaintiffs' claims 'continue to die daily' because the statute of limitations does not stop until a potential plaintiff opts in...As a result, directing the parties to meet and confer and thus requiring a further delay would unduly prejudice Plaintiffs.").

[48] *See Landry*, 252 F.Supp.3d at 1129 (the class information is "peculiarly within Swire Oil's possession.").

- should be required to produce whatever contact information it has as to the potential collective members, and to the extent other information is needed, the parties can work together in good faith to obtain that additional information.

- Second, EOG argues that phone numbers are improper, but that information is routinely ordered to be produced, and is necessary for text message notice.[49] Plaintiff's counsel will not use the telephone numbers to call class members, and will only use it for sending the notice via text message.

- Third, EOG argues that email and text notifications are improper. But "notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."[50]

- Fourth, Plaintiff agree to modify the email and text notices to address them to "EOG Water Consultants" rather than "EOG Oilfield Workers," as originally proposed.

- Fifth, Plaintiff agrees to Defendant's proposed 60 day notice period.

- Sixth, Plaintiffs agree that any notice will include Defendant's proposed language: "If you choose to join in the suit, you may be asked to: (1) appear for a deposition; (2) respond to written discovery; (3) produce documents and/or (4) appear at a trial."

The Court should authorize Plaintiffs to send notice to the class members using Plaintiffs' proposed documents and methods, with the three modifications Plaintiffs agree to above.

## F.  CONCLUSION

For these reasons, Plaintiffs satisfy the modest factual burden to demonstrate they and the Class members were collectively victims of a common policy or plan (EOG's unform policy of classifying them as independent contractors and paying them a day rate without overtime) alleged to violate the FLSA. The Court should grant Plaintiffs' Motion and allow them to send notice to the Class members as described herein.

---

[49] *Felps v. Mewbourne*, 460 F.Supp.3d at 1241.
[50] *Id.*; *see also Calvillo*, 267 F.Supp.3d at 1315 (granting same request and noting that "the law is on Plaintiff's side" on this issue).

        Respectfully submitted,

        */s/ Josh Borsellino*
        Josh Borsellino
        TX State Bar No. 24045532
        Borsellino, P.C.
        1020 Macon St., Suite 15
        Fort Worth, Texas 76102
        Telephone: (817) 908-9861
        Facsimile: (817) 394-2412
        Email: josh@dfwcounsel.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I served a copy of the foregoing on counsel of record via the District of New Mexico ECF email system.

    /s/ Josh Borsellino