IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HUNTER BROWN AND
RONALD ALBRITTON
Individually and On Behalf of All
Others Similarly Situated,

      Plaintiffs,

v.                                                   Case No.  22-CV-0116 KG/GBW

EOG RESOURCES, INC.,

      Defendant.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs Hunter Brown's and Ronald Albritton's Motion to Conditionally Certify Class. (Doc. 18). That Motion is fully and timely briefed. (Docs. 23, 28, 29).

In this case, Plaintiffs allege that Defendant EOG Resources, Inc. violated the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA") by improperly classifying employees as independent contractors and failing to pay overtime compensation. *See generally* (Doc. 1). Plaintiffs now seek to turn their individual claims into a FLSA collective action on behalf of other similarly situated water consultants. *Id*. at ¶¶ 3-4.

Having considered the briefing, the attached declarations, and the applicable law, the Court grants the Motion.

I.    *Legal Standard*

Section 7 of the FLSA requires employers to pay at least one and a half time for any hours an employee works beyond 40 hours per week. 29 U.S.C. § 207. Section 16, the operative section for this Motion, authorizes so-called "representative" or "collective" actions on behalf of

a group of "similarly situated" employees. 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in [§ 207] may be maintained against any employer… by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). These collective actions are akin to, but distinct from, a Rule 23 class action. For example, unlike class actions under Rule 23, the FLSA mandates that each employee must affirmatively opt-in to a FLSA collective action by giving consent in writing and filing the consent with the Court. *Id.* The opt-in requirement necessitates a two-stage class certification procedure. At the first stage—the notice stage—the court makes an initial determination whether certification is appropriate for purposes of notifying the potential class members and permitting employees to opt in. *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001); *also Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). Second, after discovery concludes, often prompted by a motion to decertify, the Court uses a heightened standard to determine whether the actual plaintiffs constituting the class can proceed via a collective action.[1] *See Thiessen*, 267 F.3d at 1102–03; *also Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1116 (D.N.M. 2017).

The overriding question under § 216, at both stages, is whether the named plaintiffs and opt-in plaintiffs are "similarly situated." In line with the two-step certification process, the Tenth Circuit has adopted two tiers of standards to determine whether members of a class are similarly situated. *See Thiessen*, 267 F.3d at 1102–05. In the first tier, showing that employees are similarly situated requires "nothing more than substantial allegations that the putative class

---

[1] Acknowledging that many "courts and commentators . . . have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant to § 16(b) of the FLSA," *Kelley v. Alamo*, 964 F.2d 747, 747 n.1 (8th Cir. 1992), this Court will use "collective" and "class" interchangeably for purposes of this Order.

members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (citation omitted). Once the court has conditionally certified a class, the parties engage in discovery, after which the court moves to the second-tier class certification stage, where it employs a "stricter standard of 'similarly situated.'" *Thiessen*, 267 F.3d at 1102–03 (citation omitted); *also Renfro*, 243 F.R.D. at 432.

This case is at the notice stage so this Court will apply the first-tier "substantial allegations" of a "single decision, policy, or plan" standard for purposes of this Order. Although the plaintiff must support this "modest" factual showing, "it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Landry*, 252 F. Supp. 3d at 1116 (internal citations omitted). At this stage, the Court "does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Id*. (citation omitted). Indeed, the standard for conditional certification is "a lenient one that typically results in class certification." *Id*. (citation omitted); *see also Medrano v. Flower Foods*, 2017 WL 3052493, at *3 (D.N.M. 2017) (explaining that the standard is "fairly loose initially, until discovery is completed").

Plaintiffs bear the burden of establishing that they are similarly situated. *See Montoya v. Rescue Indus., Inc.*, No. 98-1269, 1999 WL 240247, at *1 (10th Cir. Apr. 20, 1999) (citation omitted). This Court has come to conflicting conclusions about how heavy an evidentiary burden that is. As cited by EOG, one court has determined that conditional certification in the notice stage is "by no means automatic." *Eagle v. Freeport-McMoran, Inc.*, No. 15-CV-00577 MV/SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016) (citation omitted). "At least some evidence beyond unsupported factual assertions must be presented." *Id*. (citation omitted). On the other hand, another court has reasoned that notice stage applies only "a lenient test" requiring

3

"some evidence to establish a colorable basis" that the putative class members are victims of a single decision, policy or plan. *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1312 (D.N.M. 2017). There, "some evidence" is met with a "sufficiently developed" record showing "substantial allegations *or* some factual support." *Id*. (quoting *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004)) (emphasis added).

This Court has previously explained that at the notice stage "a court may consider several factors… including whether the potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct." *Pruess v. Presbyterian Health Plan, Inc.*, No. 19-CV-629 KG/JFR, 2020 WL 6544243 at *3 (D.N.M. Nov. 6, 2020) (citing *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018)); *see also Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 665 (D.N.M. 2015) (establishing factors).

II.   *Background*

EOG is an international energy company engaged in exploration and production of oil and gas, with operations in New Mexico, Texas, Pennsylvania, Oklahoma, North Dakota, Wyoming, and Colorado.[2] Complaint (Doc. 1) at ¶ 17; *also* Response (Doc. 23) at 4.[3] In order to execute its business model of exploring, developing, and producing oil and gas wells, EOG,

---

[2] While the Court's determination as to a group of employees' similarity is a finding of fact, *Landry*, 252 F. Supp. 3d at 1085 (collecting cases), the Court otherwise need not make authoritative findings of facts or "resolve factual disputes," *id*. at 1116, at this stage. For this reason, the Court liberally accepts these background facts as true from the Complaint and briefing, but only for the purposes of this conditional certification Motion. At the conclusion of discovery, the parties may relitigate the factual findings made here. *Id*. at 1086.

[3] Here and elsewhere, the Court refers to the ECF-generated page numbers applied to the header of documents rather than the party-formatted page numbers at the foot of each page.

by its own description, "contracts with various vendors and suppliers to provide the different services, personnel, and equipment required for its operations." (Doc. 23) at 4; *see also* Motion (Doc. 18) at 8 (describing contractors as "consultants").

Drilling and fracking operations require significant water and, eventually, produce substantial wastewater, or "produced" water, which must be cleaned and reused or disposed of in accordance with regulatory standards. (Doc. 1) at ¶ 17; (Doc. 23) at 4. To ensure EOG has enough water to sustain its drilling, to manage water operations generally, and to properly dispose of produced water, EOG relies on "water consultants," who are classified as independent contractors. (Doc. 1) at ¶ 17–19; (Doc. 18) at 8; (Doc. 23) at 5.

Plaintiff Hunter Brown worked for EOG as a water consultant from June 2014 until March 2020. (Doc. 18) at 8; (Doc. 23) at 9. He alleges that he regularly worked well more than 40 hours per week, averaging 80 to 100 hours per week. Decl. of Hunter Brown (Doc. 18-1) at ¶ 12. But he alleges he was paid the same day rate for each day worked no matter how many hours he accrued in a week, in violation of the overtime pay requirement. *Id*. at ¶ 9.

Plaintiff Ronald Albritton worked for EOG as a water consultant from August 2012 until December 2021. (Doc. 18) at 8; (Doc. 23) at 10. He alleges that he worked over 40 hours per week almost every week that he worked, and typically worked 80 to 100 hours per week. Decl. of Ronald Albritton (Doc. 18-2) at ¶¶ 3–4. He also alleges that he was paid the same day rate no matter how many hours he worked per week, without receiving additional compensation for overtime hours worked. *Id*. at ¶ 4.

EOG states that it contracted with Mr. Brown via a Master Services Agreement (MSA) with his corporate entity, Hunter Brown Consulting, and thus he was an independent contractor, not an employee. (Doc. 23) at 9. EOG similarly states that rather than employ Mr. Albritton, it

5

contracted with his personal corporate entity, Ronald Albritton Consulting LLC. *Id*. at 10. Both Mr. Brown and Mr. Albritton argue they were improperly classified as independent contractors because they worked full-time for EOG, (Doc. 18) at 8; they worked so many hours they were prevented from accepting work elsewhere, (Doc. 18-2) at ¶ 3; their work was controlled and directed by EOG, including hours worked and rate of pay, (Doc. 18) at 8–9; (Doc. 18-1) at ¶ 6; they followed EOG policies and procedures, (Doc. 18-1) at ¶ 14; (Doc. 18-2) at ¶ 2; they could not create or modify their job duties, nor were they empowered to exercise independent judgment or discretion and were required to follow directives from superiors, (Doc. 18-1) at ¶ 16; (Doc. 18-2) at ¶ 2; their work required little skill or education and was often learned via on-the-job training, (Doc. 18-1) at ¶ 15; EOG provided most of the equipment required to complete their job duties, *id*. at ¶ 18; and they were not permitted to sub-contract or hire employees if they needed help and instead were required to defer to EOG to hire more water consultants, (Doc. 18-1) at ¶ 13; (Doc. 18-2) at ¶ 5.

Plaintiffs also allege that the work conditions they describe apply to other water consultants at EOG. (Doc. 18-1) at ¶¶ 19-20; (Doc. 18-2) at ¶ 4. Specifically, they allege that based on their personal knowledge, other water consultants were classified as independent contractors, regularly worked well over 40 hours per week, and were paid a flat day rate regardless of hours worked. *Id*.

So, Plaintiffs seek to conditionally certify a class defined as: "All water consultants working for EOG during the past 3 years who were classified as independent contractors and

paid a day-rate with no overtime, except those hired through Bedrock PC 1099, LLC."[4]  (Doc. 28) at 2–3.

III.   *Analysis*

The Court concludes that Plaintiffs have met their burden of showing "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Plaintiffs urge that the members of the putative class are similarly situated because they each

> (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for EOG; (4) were all employees of EOG that it mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) all performed work for EOG in the oilfield.

(Doc. 18) at 11–12.  This alleges job similarities (*i.e.*, having similar water consultant jobs) and certain unified policies affecting the whole class (*i.e.*, being improperly classified as contractors, and receiving pay at a day rate without overtime).  Plaintiffs support their arguments with declarations from the named Plaintiffs.  (Docs. 18-1, 18-2).  These allegations are sufficient to make a first-stage showing that the proposed class is similarly situated.  *E.g.*, *Renfro*, 243 F.R.D. at 433-34 (finding allegations that defendants "engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan").

---

[4] This definition was originally in the Complaint.  (Doc. 1) at ¶ 3.  The Court notes that in its Motion, Plaintiffs removed the clause excluding the Bedrock consultants.  *See* (Doc. 18) at 7 (defining class as "all water consultants working for EOG during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime.").  EOG objected in its Response, (Doc. 23) at 11–13, and then Plaintiffs in their Reply consented to using the original definition, (Doc. 28) at 2.

7

EOG counters that Plaintiffs' evidence amounts to nothing more than personal statements of belief without sufficient factual support and asserts that their water consultants are not similarly situated because different water consultants worked for different third-party vendors across a range of geographic areas where their job duties varied. (Doc. 23) at 14–22. The Court here is persuaded that these factual disputes are better suited to adjudication at the second tier of class certification—a determination the Court makes with reference to a very recent, factually analogous case where it concluded the same. *See Corral v. Concho Res., Inc.*, 21-CV-390 KG/SMV at *7, 2022 WL 3715853, at *4 (D.N.M. Aug. 29, 2022). At this stage, recall that the Court "does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Landry*, 252 F. Supp. 3d at 1116 (citations omitted). Instead, the Court directs its attention to the plaintiffs' submissions to determine if the allegations are "substantial"—"a lenient [standard] that typically results in class certification." *Id*. Here, leaving aside the factual disagreements, the allegations of routine misclassification and failure to pay overtime are, on their own terms, substantial. *See, e.g.*, *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2005 WL 1799208, at *4 (D. Kan. 2005) (holding variations in employees' specific job duties did not defeat conditional certification because they shared general duties, and injuries arose from employer's failure to pay overtime).

Weighing heavily on the Court's reasoning is the federal courts' interpretation of FLSA, under which the purpose of a collective action is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Given that purpose, and the leniency of the standard at the first stage of the certification process,

8

the Court determines the Complaint makes substantial allegations of policies affecting water consultants sufficient to merit notification of the class. The other disputes can be addressed on a motion to decertify.

IV.   *Notice*

In conditional certification cases, the mechanics of notifying potential class members is the source of numerous secondary disputes. Here, Plaintiffs request notice by mail, email, and text message. (Doc. 18) at 19. Plaintiffs further request that EOG provide a list of names and contact information. *Id*. Finally, Plaintiffs propose a 90-day response period. Proposed Notice (Doc. 18-3) at 4. Plaintiffs attached a proposed notice and consent form. (Doc. 18-3).

EOG argues that the parties should be required to meet and confer regarding the notice. Nonetheless, EOG objects to the proposal in several ways. First, EOG objects that it cannot be responsible for providing employee information because EOG did not employ the potential class members; third-party contractors did. (Doc. 23) at 23. Second, it objects that the scope of the personal information requested is too broad, implicating privacy concerns. *Id*. Third, it objects that using mail, e-mail, and text message is duplicative and too broad. *Id*. Fourth, it objects that the proposed notices are addressed to "EOG oilfield workers" which is inconsistent with the proposed class. *Id*. at 24. Fifth, it objects that a 90-day opt-in period is excessive and is typically 60 days. *Id*. Sixth, and finally, it argues that the notice should include a statement of the potential class members' "obligations," like appearing for depositions or trial.

As an initial matter, time is of the essence in notifying the potential class, so the Court will not require further conference on the proposed notice or method of distribution. The Court next addresses each objection in turn.

With respect to who should bear the burden of identifying potential class members, courts commonly order defendants to produce this information. *See, e.g.*, *Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020); *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *8 (D.N.M. 2020). Which purported third-party vendors EOG used to provide water consultants, and the contact information for those consultants, is uniquely within EOG's control.

The Court is sensitive to divulging information of putative class members, but disagrees that the information requested—names, addresses, telephone numbers, e-mail addresses, work locations, and dates of employment—implicate privacy concerns. EOG will produce all available contact information, including mailing address, email address, phone number for text message communication, and dates of employment/work. *See, e.g.*, *Valencia*, 2020 WL 2768977, at *4 (authorizing text message notification).

The Court disagrees that using mail, e-mail, and text message is too broad. Given the isolated nature of oilfield work, the long stretches of time spent away from home, and the near-universal use of e-mail and texting today, the Court approves the use of all three methods, as it did recently in *Corral*, 2022 WL 3715853, at *5.

On the objection as to the class member's title in the notices, the Court notes that in its Reply, Plaintiffs conceded the point and agreed to use "EOG Water Consultants." (Doc. 28) at 13.

The Court agrees that 60 days is the typical opt-in period and sustains the objection as to the proposed 90-day timeline. *See, e.g.*, *Corral*, 2022 WL 3715853, at *5; *LeBlanc v. Halliburton Co.*, No. 17-cv-0718 KG/GJF, 2018 WL 3999567, at *3 (D.N.M. Aug. 21, 2018). The Court again notes that Plaintiffs agreed to a 60-day window in their Reply. (Doc. 28) at 13.

Finally, as to the content of the notice, the Court once again notes that Plaintiffs agreed to include the proposed "obligation" language. (Doc. 28) at 13. Therefore, the proposed notice shall include the following: "If you choose to join in the suit, you may be asked to: (1) appear for a deposition; (2) respond to written discovery; (3) produce documents and/or (4) appear at trial." With that addition, the Court approves the proposed notice.

V.  *Conclusion*

Based on the foregoing, the Court concludes Plaintiffs have made substantial allegations that the putative class members are similarly situated. Therefore, the Court grants Plaintiffs' Motion for Conditional Certification and permits them to provide the proposed to potential class members.

IT IS, THEREFORE, ORDERED that

1. Plaintiff's Motion for Conditional Certification (Doc. 18) is GRANTED;

2. The following collective is conditionally certified:

**All water consultants working for EOG during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime, except those hired through Bedrock PC 1099, LLC;**

3. 10 days from the date of entry of this Order, EOG will provide Plaintiffs' counsel in Excel (.xlsx) format the following information regarding all putative collective members:

   a. Full name;

   b. Last known address(es) with city, state, and zip code;

   c. Last known e-mail address(es) (non-company address if applicable);

   d. Last known telephone number(s);

   e. Beginning date(s) of employment/work; and

   f. Ending date(s) of employment/work (if applicable);

  4. Within twenty (20) days from the date of entry of this Order, Plaintiffs' counsel will send a copy of the Court-approved Notice and Consent Form to the putative collective members by first class U.S. mail and by e-mail and/or text message;

  5. Putative collective members will have sixty (60) days from the date of mailing of the Notice and Consent Forms to return their signed Consent Forms to Plaintiffs' counsel for filing with the court;

  6. Within twenty (20) days from the date of entry of this Order, EOG are required to post the Notice and Consent Forms on all relevant EOG jobsites for sixty (60) days in an open and obvious location.  Defendants may remove the notice after sixty (60) days.

_____
UNITED STATES DISTRICT JUDGE